**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| REINALDO GARCIA, *individually and as the guardian ad litem for J.G.I. and J.G.II, minors*, ILDEFONSO HERNANDEZ, YENNIS HERNANDEZ, and CIRILIA PEREZ, <br><br> Plaintiffs, <br><br> vs. <br><br> FROLAIN QUEVEDO and SWEET LIFE TRANSPORTATION, INC., <br><br> Defendants. | No. 2:20-cv-01960-DCN <br><br> **ORDER** |

The following matter is before the court on nonparty Susan deHoll's motion to quash, ECF No. 69. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This discovery dispute arises from a negligence action brought by plaintiffs Ildefonso Hernandez, Yennis Hernandez, Cirilia Perez, and Reinaldo Garcia—individually and as the guardian ad litem for J.G.I. and J.G.II, minors, ("plaintiffs") against defendants Frolain Quevedo and Sweet Life Transportation, Inc. ("defendants") for injuries sustained in a tractor-trailer collision. Plaintiffs allege that they incurred significant medical expenses that exceed $500,000.00. In an effort to rebut their claims for damages, defendants retained certain physicians to review plaintiffs' records and opine as to the reasonableness and relatedness of the treatment and expenses. Two of those physicians, P. Douglas deHoll, M.D. ("Dr. deHoll") and M. Cristina Payan, M.D. ("Dr. Payan"), provided opinions essentially claiming the plaintiffs were not injured in the collision and that none of their treatment was medically reasonable or necessary. Dr.

1

deHoll is a fellowship-trained spinal surgeon and board-certified orthopedic surgeon. Dr. Payan is a fellowship-trained and board-certified neuroradiologist. Dr. deHoll has been in private practice since 2003, and Dr. Payan has over eighteen years of experience in interpreting neuroradiology studies in private practice.

Defense counsel located and retained both Dr. deHoll and Dr. Payan through an expert witness referral group, Juris Medicus, LLC ("Juris Medicus"). Juris Medicus is a Texas-based company that assists legal practitioners in retaining medical experts. It is not a party to this case or an expert witness. According to Juris Medicus, it has been in business for over ten years and has connected attorneys with medical experts in over 6,000 cases over the last five years. See ECF No. 76-1 ¶¶ 2, 6. The firm provides attorneys with the option to select among medical experts from its network based on the specific facts of their case and assists with coordination, scheduling, and communication with the experts. Id. ¶ 3. Juris Medicus's business development manager in South Carolina, Susan deHoll ("Ms. deHoll"), is the wife of Dr. deHoll. She is not an expert witness retained in this or any other case. Ms. deHoll is also not a physician and does not practice medicine in any way.

Under Federal Rule of Procedure 45, plaintiffs served a subpoena, dated October 4, 2021, on Juris Medicus, LLC containing thirty-one total requests. Sixteen of these requests sought information pertaining to Ms. deHoll. Juris Medicus timely served objections on October 18, 2021 and subsequently produced over 2,500 documents, including some of Ms. deHoll's communications regarding this case. Thereafter, on February 17, 2022, plaintiffs' attorney noticed a videotaped deposition for Ms. deHoll, with an accompanying Rule 45 subpoena. ECF No. 51-6. The subpoena not only

commands Ms. deHoll's testimony, but also requests production of "[her] entire file as it pertains to this case, including any and all information realted [sic] to Plaintiffs, Dr. P. Douglas deHoll, Dr. Christine [sic] Payan, billing and expenses related to this matter, and any and all communications from defense counsel." Id. at 3.

On March 3, 2022, Ms. deHoll filed a motion to quash the subpoena or, alternatively, to issue a protective order excusing Ms. deHoll from compliance with the subpoena. ECF No. 69. On March 16, 2022, plaintiffs responded in opposition, ECF No. 73, and on March 23, 2022, Ms. deHoll replied, ECF No. 76. Defendants joined in Ms. deHoll's motion on March 17, 2022. ECF No. 74. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 45, a party may compel a nonparty's attendance to a deposition. Rule 45 also permits the subpoenaed nonparty to quash or modify a subpoena where it, inter alia, "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26(b). Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012). When discovery is sought from nonparties, however, its scope must be limited even more. Va. Dep't of Corrections v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019).

As the Fourth Circuit explained in Va. Dep't of Corrections,

> Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. For example, a party's email provider might well

3

> possess emails that would be discoverable from the party herself. But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider.
>
> A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. In re Modern Plastics Corp., 890 F.3d 244, 251 (6th Cir. 2018); Citizens Union of N.Y.C. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). But courts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally. In re Public Offering PLE Antitrust Litig., 427 F.3d 49, 53 (1st Cir. 2005).

Id.

Likewise, Federal Rule of Civil Procedure 26(c) authorizes the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" by forbidding or limiting the scope of discovery. "The standard for issuance of a protective order is high," Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017), and the movant "bears the burden of establishing good cause," Slager v. S. States Police Benevolent Ass'n, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016). A motion for a protective order requires the court to "weigh the need for the information versus the harm in producing it." Id. (quoting A Helping Hand, LLC v. Balt. Cnty., 295 F. Supp. 2d 585, 592 (D. Md. 2003)). In determining whether to quash a subpoena or issue a protective order, as with most matters of discovery, the court wields broad discretion. Cook, 484 F. App'x at 812 (motions to quash); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (protective orders).

4

### III.   DISCUSSION

Pursuant to Federal Rules of Civil Procedure 26 and 45, Ms. deHoll moves the court to quash the subpoena for her deposition and her production of documents or, in the alternative, to enter an order protecting her from compliance with the subpoena. Ms. DeHoll argues that the subpoena requests documents and deposition testimony that are irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the present case. Ms. DeHoll explains that she has no personal knowledge of facts relevant to the underlying lawsuit and that she has not been retained to—nor is she qualified to— offer any expert opinions in this action. Moreover, she argues that she only possesses requested documents in her capacity as a Juris Medicus employee and those documents— to the extent relevant—have already been produced by Juris Medicus as the proper custodian. Therefore, Ms. deHoll argues that plaintiffs have no basis to subpoena her and that the subpoena can only be intended to harass the wife of an expert witness and the employee of an expert witness referral company.

Plaintiffs argue that the information they seek from Ms. deHoll is relevant to determine "Juris Medicus's influence in this litigation, identify repeated patterns of Juris Medicus processes in South Carolina, and understand their physician recruitment, education, and engagement, and to establish bias by the Defendants' retained experts." ECF No. 73 at 9. Plaintiffs argue that Ms. deHoll is the Juris Medicus representative who coordinated Dr. deHoll and Dr. Payan's involvement in this case, by, for example, "following up on medical records, diagnostic scans, and general communications." Id. at 12. Plaintiffs therefore seek Ms. deHoll's deposition testimony to better understand the extent to which Juris Medicus is involved in generating its expert witnesses' reports and

5

opinions. Plaintiffs submit that they are agreeable to scheduling a deposition of Juris Medicus's corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6) in lieu of Ms. DeHoll's deposition. However, they argue that Juris Medicus is unlikely to consent to such a deposition and that Ms. deHoll is the only Juris Medicus employee within South Carolina and witness within the geographical scope of Fed. R. Civ. P. 45(c) who can provide testimony as to Juris Medicus's involvement in the present litigation.

To begin, the court does not find that Ms. deHoll is the proper party to subpoena for the documents plaintiffs seek. In the court's view, in requesting Ms. deHoll's "entire file" related to this case, including communications with defendants and billing and expense information, the subpoena seeks production of Juris Medicus's corporate records. Ms. deHoll asserts, and this court has no reason to doubt, that Ms. deHoll does not have possession, custody, or control of these documents in her individual capacity. Plaintiffs argue that Ms. deHoll has possession, custody, and control of the documents in her role as Juris Medicus's business development manager. However, on its face, the subpoena is not directed at Ms. deHoll in her capacity as a custodian of records for Juris Medicus. As such, the court considers the subpoena directed at Ms. deHoll in her individual capacity. Therefore, plaintiffs cannot require her to produce her employer's records. See, e.g,. Learning Connections, Inc. v. Kaufman, 280 F.R.D. 639 (M.D. Fla. 2012) (issuing a protective order where a bank employee who was served in an individual capacity, and not as a custodian of records for bank, did not have possession, custody, or control of records sought). Even if Ms. deHoll could produce the requested documents, the court finds that those documents are available from other, better sources. Va. Dep't of Corrections, 921 F.3d at 189 ("[T]he requesting party should be able to explain why it

cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena."). It is entirely unclear to the court why plaintiffs are seeking the requested documents from Ms. deHoll individually, particularly when plaintiffs have already subpoenaed Juris Medicus, received its production, and not challenged any of its objections to plaintiffs' requests. To the extent the subpoenaed documents, or their substantial equivalent, have already been produced, the court finds the duplicative request on a nonparty who has no substantive role in this litigation to be unduly burdensome and not proportional to the needs of this case. To the extent those documents have not been produced, plaintiffs' dispute is with Juris Medicus, not Ms. deHoll.

Additionally, the court does not find Ms. deHoll's deposition testimony relevant or proportional to the needs of the case. Plaintiffs do not argue that they are entitled to depose Ms. deHoll simply because she is the wife of an expert witness, and rightfully so. Any information Ms. deHoll may possess about her husband's bias or credibility as an expert witness is better elicited from Dr. deHoll himself. Indeed, permitting parties to depose the spouses of expert witnesses regarding their employment and financial information would undoubtedly create a chilling effect on expert witness participation in litigation that is undesirable as a matter of public policy. Helbig v. Univ. of Maryland St. Joseph Med. Ctr. Found., Inc., 2018 WL 4777580, at *3 (D. Md. Oct. 2, 2018) ("The prospect of being subject to such discovery can have a chilling effect on an expert witness's willingness to participate on behalf of a party, something that, as a matter of public policy, is of concern particularly where it involves an ancillary issue."). If

plaintiffs are suggesting that Ms. deHoll proffered Dr. deHoll as an expert witness for defendants because he is her husband and not because of his qualifications, that suggestion does not bring Ms. deHoll's deposition within the scope of discovery. Any concern about Dr. deHoll's qualifications can be fully explored by reviewing his credentials and through deposition and cross-examination of Dr. deHoll himself.

Likewise, Ms. deHoll's role as business development manager of Juris Medicus does not make her deposition appropriate in this case. Plaintiffs argue that, as business development manager for Juris Medicus, Ms. deHoll should be familiar with Juris Medicus's business model and how this expert referral company markets to physicians they seek to recruit and train. However, plaintiffs do not explain why further discovery is warranted beyond Juris Medicus's production on the matter. As such, the court does not find any additional discovery into Juris Medicus's business model and marketing strategy to be relevant and proportional to the needs of this case. Not only would a deposition on these broad topics subject Ms. deHoll and Juris Medicus to unnecessary time and financial expenditures, it would also expose competitively sensitive information and invade Juris Medicus's privacy and confidentiality interests. Juris Medicus is not on trial or testifying in this case, and its role in facilitating Drs. deHoll and Payan's participation in this action is an entirely ancillary matter. To be sure, "the fact that an expert may have a . . . history of earning significant income testifying primarily as a witness for defendants . . . certainly fits within recognized examples of bias/prejudice impeachment." Behler v. Hanlon, 199 F.R.D. 553, 557 (D. Md. 2001). However, the income Drs. deHoll and Payan have earned testifying as expert witnesses in the past and will earn testifying as such in this case can be gleaned without a depositional deep dive into Juris Medicus's

business model and operations. Indeed, even with the discovery already received from Juris Medicus, plaintiffs do not point to anything even seemingly untoward in Juris Medicus's recruitment and training of its affiliated physicians. Based on the information before it, the court has no reason to believe that Juris Medicus's assistance in coordinating expert witnesses for defendants is likely to have produced any greater bias than that expected of retained expert witnesses. For example, even if Ms. deHoll did, as plaintiffs suggest, coordinate Drs. deHoll and Payan's involvement in this case by "following up on medical records, diagnostic scans, and general communications," this allegation suggests only that she provided administrative assistance and certainly does not suggest any entanglement by Ms. deHoll or Juris Medicus in the substance of the expert witnesses' opinions. At best, plaintiffs appear to be engaging in a fishing expedition in the hopes of surfacing some additional incentive or directive from Juris Medicus for its expert witnesses to testify favorably for its clients. Subjecting Ms. deHoll to a deposition based on this theoretical possibility would invite spurious depositions of business, financial, personal, and administrative affiliations of expert witnesses who are only tangentially involved in litigation as a means of harassment and waste of party and nonparty resources. The court declines to open that floodgate.

   The cases plaintiffs cite to demonstrate the supposed propriety of their subpoena against Ms. deHoll are simply inapposite. This case is not analogous to Behler. In that case, the discovery requests were directed at the expert witness and sought tax returns and documents related to income the expert witness had earned from defense attorneys and insurance companies in connection with testifying in personal injury cases. Behler, 199 F.R.D. at 555. As discussed above, Ms. deHoll is not an expert witness, and

plaintiffs are not simply requesting information about the earnings of Drs. deHoll and Payan in their capacities as expert witnesses. Rather, plaintiffs are seeking excessively broad business information of the company that referred those physicians to defendants. Likewise, this case is not akin to Beckner v. Bayer Cropscience, LP, 2006 WL 6906942, at *3 (S.D. W. Va. June 28, 2006). Beckner involved a defendant that was a donor to the organization for which its expert witness worked, which raised a concern about the expert witness's bias for the defendant. The plaintiff requested that the organization produce records of the defendants' financial contributions, and the court permitted the plaintiff to inspect limited organizational contribution records under a protective order. Id. at *6–7. Here, there is no indication that defendants have a history of contributing financially to Juris Medicus, and even if they had, plaintiffs are not requesting records of those contributions. Again, plaintiffs are seeking to depose the employee of a nonparty referral company to elicit testimony on the company's marketing and operational practices— testimony plaintiffs speculate may somehow weigh on the expert witnesses' biases. However, the court is entirely unconvinced that this testimony is likely to reveal any evidence of bias above and beyond the fact that the witnesses are being compensated for their testimony, which can be proven by way of much less burdensome discovery, like compensation records. As such, the court does not find Ms. deHoll's deposition—or the deposition of any Juris Medicus representative—to have a marginal benefit in litigating the issue of defendants' expert witnesses' bias. Va. Dep't of Corrections, 921 F.3d at 189 ("On the benefit side of the [proportionality analysis for nonparty discovery], courts should consider not just the relevance of information sought, but the requesting party's need for it . . . . The information sought must likely (not just theoretically) have marginal

benefit in litigating important issues. (We mean 'marginal' in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere de minimis benefit will suffice.)").

Overall, under the more demanding variant of the proportionality analysis for subpoenas issued against nonparties, the court does not find that the benefits of the discovery requested in the subpoena outweigh the burden on Ms. deHoll or Juris Medicus. Therefore, the court quashes the subpoena.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to quash.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 6, 2022
Charleston, South Carolina**